JACKSON, ET AL. *v*. CUPPLES, ET AL.

[No. 389, September Term, 1964.]

*Decided August 2, 1965.*

The cause was argued before HORNEY, MARBURY, SYBERT, OPPENHEIMER and BARNES, JJ.

*Thomas S. Jackson,* with whom were *Vivian V. Simpson* and *Joseph B. Simpson, Jr.,* on the brief, for appellants.

*E. Austin Carlin* for Orville W. Whitmer and Margaret M. Whitmer, part of appellees; and *Irving A. Levine* for Regis C. Cupples and Eleasia B. Cupples, other appellees.

MARBURY, J., delivered the opinion of the Court.

Old Virginia City, Inc., on May 24, 1961, executed and delivered a promissory note to the National Bank of Fairfax by which it promised to pay $75,000, with interest at six per cent per annum. This sum was to be paid in semi-annual installments of $8,793. The note further provided that in event of default of any payment, the entire unpaid balance would become due. Prior to the delivery of the note all of the parties to this action, except Thomas S. Jackson, as well as other individuals became joint endorsers on the note. No payments were made after July 30, 1962, and, the note being in default, the bank brought actions in Virginia and Maryland against the maker and the endorsers who lived in those respective states. The several actions in Virginia and one in Maryland resulted in the

entry of judgments against the endorsers who were residents of those states. They, and several of the Maryland endorsers who recognized their responsibilities in this matter, succeeded in accumulating enough money to pay the amount due the bank, including principal, interest, costs and attorney's fee, amounting to $70,500. After the full amount due the bank was paid, it assigned the note to its attorney, Thomas S. Jackson, who accepted it as trustee for all the endorsers.

At the time of payment, there was pending in the Circuit Court for Montgomery County a law action brought by the bank against the Maryland endorsers. Jackson, in his capacity as trustee, made efforts to obtain contributions from all of the joint endorsers in order to distribute the burden of the loss among all the parties who had been under a joint obligation to pay. Being unsuccessful, a bill of complaint was filed on May 5, 1964, in the Circuit Court for Montgomery County, sitting in equity, requesting the court to take jurisdiction of the trust, to compel those who had not met their pro rata obligations to contribute their share of the total liability, and to supervise an accounting between the endorsers who were residents of Maryland. The defendant-appellees who were alleged to have not contributed their pro rata shares, filed demurrers to the bill of complaint. After a hearing on the demurrers Judge Shure, on October 21, 1964, ordered that the demurrers be sustained without leave to amend, but without prejudice to the plaintiff-appellants to seek determination of the issues in the law action. As grounds for sustaining the demurrers the order stated: (1) that suit was prematurely filed, and (2) the amounts alleged to be due in the bill of complaint are inconsistent with exhibit "B", which was a tabulation of contributions and balances due from non-cooperating endorsers of the note, and thus would not warrant any decree as prayed in this contribution action. It is from this order that the appellants, who were the endorsers seeking contribution and the trustee, Jackson, have appealed.

The appellants first argue that their bill of complaint states the proper basis for relief in equity by contribution by co-endorsers. We agree, and appellees themselves concede in their brief that this is a proper remedy. We have many times held

that one joint obligor may claim contribution from another such obligor for having discharged their mutual obligation. *Mallis v. Faraclas,* 235 Md. 109, 200 A. 2d 676; *Cunningham v. Cunningham,* 158 Md. 372, 148 Atl. 444; *Brady v. Brady,* 110 Md. 656, 73 Atl. 567. The present equity suit is the result of the failure of some of the twenty-four endorsers to contribute their pro rata share in the satisfaction of a joint obligation. We hold that the appellants' suit in equity for contribution is proper.

Appellees claim in their demurrers and in this appeal that the appellants' bill of complaint was premature requiring dismissal because an action at law is pending. Appellants, on the other hand, argue that this suit for contribution is a separate cause of action which may be brought on its own merits. It appears that the bank, plaintiff in the law action in the Circuit Court for Montgomery County, assigned the note after payment to Jackson, who, with some of the endorsers, brought the suit in equity for contribution. The law action, still pending, is a suit by the bank, which was the previous owner and holder of the note, for a money judgment against certain of the endorsers, including four of the six appellees here. This law suit does not bar the equity suit for contribution which is a separate cause of action and which may be brought on its own merits. *Sheeler v. Holt,* 161 Md. 366, 157 Atl. 195. In the present case appellants have sought to provide a practical solution to the rather complex problem of accounting. They have proposed, in the bill of complaint, that each appellee be held responsible for the overpayment on the part of the appellant-endorsers; and the proposal specifically provides that no party will be ultimately liable for more than his pro rata share of the obligation. This would be assured by a balancing of the funds received from all parties and a refund of the excess paid by any party over what finally amounts to his share of the obligation. This would be the most practical and workable solution in view of the fact that some of the parties may be insolvent and the burden will then have to be allocated among the remaining endorsers. The proposition that an equitable solution may be sought between the solvent sureties was long ago confirmed in *Young v. Lyons,* 8 Gill 162 (1849), where we said:

"In equity, however, it is established, and uncontroverted, that where there are several sureties, and any of them become insolvent, those who pay the whole debt can compel contribution from the remaining solvent sureties towards the entire debt paid."

Exhibit B, attached to the bill of complaint, showed the current status of each endorser in terms of what he had contributed, and the total overpayment by the plaintiff-appellants. This could not be intended to constitute a final accounting among the parties. For this reason, it was immaterial that the amount sought from each appellee in the bill of complaint did not agree with exhibit B. The purpose of this suit in equity was to establish the ultimate liabilities of the respective parties. That exhibit did not purport to be a projection of those ultimate liabilities. The prayer of the bill of complaint contemplated that, if any one of the defendants is required to pay the full $29,700 overpayment, the accounts of the parties should be adjusted so that each contributing endorser was equally burdened.

A demurrer on the ground that the plaintiff is not entitled to the relief asked for should be over-ruled, if the plaintiff is entitled to some relief. *Lipskey v. Voloshen,* 155 Md. 139, 141 Atl. 402. If the specific prayer of the bill does not accomplish this, then the prayer for general relief contained in the bill of complaint does so. We find that the chancellor was in error in sustaining the demurrers.

> *Order reversed and cause remanded for further proceedings. Costs to be paid by appellees.*