951 A.2d 112

**David B. POSNER, Personal Representative of the Estate of Rose B. Posner**

**v.**

**COMPTROLLER OF the TREASURY.**

**No. 563 Sept. Term, 2007.**

Court of Special Appeals of Maryland.

June 30, 2008.

Peter E. Keith (Gallagher, Evelius & Jones, LLP, on the brief), Baltimore (Mark T. Willen, Summerfield, Willen, Silverberg & Limsky, PA, on the brief), Owings Mills, for Appellant.

John K. Barry (Douglas F. Gansler, Atty. Gen., on the brief), Annapolis, for Appellee.

Panel: KRAUSER, C.J., JAMES R. EYLER, and WRIGHT, JJ.

WRIGHT, Judge.

This appeal stems from a series of cases involving the estate of Rose B. Posner, the relevant issue being the ownership of a marital trust. In 1998, Rose B. Posner's estate paid both federal and Maryland estate taxes on the trust. In 1999, this Court concluded that the marital trust was not part of Rose Posner's estate, and therefore, the marital trust should not have been included on either tax return.[1]

Subsequently in 2000, the estate filed for both federal and State tax refunds for the portion of overpayment. The U.S. Tax Court granted a refund [2] and issued the estate a check on January 5, 2005. The Comptroller of Maryland, appellee, then issued a refund on February 10, 2005, but refused to pay interest accrued. David P. Posner, personal representative of the estate, appellant, filed a timely appeal to the Maryland Tax Court, where the claim for interest was also denied. The estate then appealed to the Circuit Court for Baltimore Coun-

---

1. *Posner v. McDonagh*, No. 1574, September Term 1997, 125 Md.App. 782, 125 Md.App. 784 (filed March 11, 1999), *cert. denied*, 354 Md. 572, 731 A.2d 970 (1999).

2. *Estate of Rose B. Posner v. Commissioner of Internal Revenue*, T.C. 2004–112 (2004).

ty, which denied the claim for interest and affirmed the Maryland Tax Court.

The following issues are presented on appeal:

1. Whether the estate is entitled to a refund on the interest on its Maryland estate tax refund under the applicable Maryland Statute.

2. Whether the court erred in not following the federal decision to award interest.

### *Facts*

Rose Posner died on October 28, 1996. Her personal representative filed an estate tax return on July 15, 1998. This included marital trust assets that the personal representative believed were subject to a power of appointment held by Rose Posner. The estate was initially assessed a 10% late penalty, and the Comptroller requested a payment of interest. Representatives of the estate requested a waiver of both as a result of three pending lawsuits that would affect the ultimate tax liability of the estate. On October 13, 1998, the Comptroller agreed to waive the late penalty but required an immediate payment of the interest, which the estate paid accordingly.

In 1999, this Court held that the relevant marital trust assets were not a part of Rose Posner's estate, and as a result, the estate did not owe taxes on the property. As a result of this holding, in July, the estate filed amended State and federal tax returns. On July 26, 2000, the State of Maryland confirmed receipt of the amended returns but stated that evidence of the Internal Revenue Service determination must accompany the claim.

Meanwhile, litigation was ensuing over the federal refund. Initially, the IRS refused to grant any refund, and the estate pursued the matter in U.S. Tax Court. During this time, the Comptroller sent inquiry letters, and the estate responded with updates. In 2004, the estate prevailed on its federal refund claim, but the U.S. Tax Court stated it did not have jurisdiction at that juncture to award interest on the overpayment. The IRS did not appeal from the decision, and in its

computation of the refund, awarded both a refund and interest on the overpayment.  On January 5, 2005, the estate alerted the Comptroller of the conclusion of the federal litigation and subsequent refund.  The State agreed to refund the overpayment and the interest on a late payment, but refused to pay interest on the refund.

The estate appealed the Comptroller's decision to the Maryland Tax Court, which, in a written order and memorandum, stated:

> The Maryland tax liability is dependent upon the actual federal determination of federal liability.  If the federal liability is increased, the Estate is required to file an amended return that increases its Maryland liability.  A right of refund of tax previously paid to the Respondent does not exist until there is an actual "decrease in the federal estate tax" that can be used to calculate the amount of the refund.  This has been a consistently followed administrative practice for determining the Maryland tax liability by the Respondent.  Accordingly, until there is an actual decrease of federal estate tax, there can be no "claim" and no right to interest.

The estate then appealed the Maryland Tax Court decision to the circuit court, which affirmed and stated:

> The Tax Court correctly interpreted the requirements of the Maryland statutes.  Petitioner's claim could not be properly filed under Tax–General § 13–901(d) until the federal estate tax obligation was decreased.  Any amounts included in the 2000 refund claim were only estimates and speculative.  It was not until January 6, 2005, when Petitioner filed an amended return based on the actual federal estate tax determination, that the days began to run.

### *Standard of Review*

The parties stipulate to all facts and contend that the only issue is a question of law.  The case originated in the Maryland Tax Court, an administrative agency.  As noted in a recent Maryland Court of Appeals case, *AT & T Commc'ns of*

*Maryland v. Comptroller of the Treasury*, 405 Md. 83, 950 A.2d 86, 92 (2008), the reviewing court may only reverse a tax court if the decision is erroneous as a matter of law. The Court is "not at liberty to substitute our judgment for the expertise of the agency. Our role is to accord deference to an agency's interpretation of a statute which it administers." *Comptroller v. Citicorp Intern. Commc'ns, Inc.*, 389 Md. 156, 163, 884 A.2d 112 (2005). *See also Comptroller v. Blanton*, 390 Md. 528, 533, 890 A.2d 279 (2006). However, we may overturn an agency decision when the decision is based on erroneous conclusions of law. *See Comptroller of the Treasury v. Phillips*, 384 Md. 583, 590, 865 A.2d 590 (2005).

### *Discussion*

The conflict arises as to the statutory requirements for a refund on interest accrued on a previously paid estate tax. The main interest refund statute is Md.Code (2004 Repl.Vol.), § 13–603 of the Tax–General Article, which reads:

(a) *In general.*—Except as otherwise provided in this section, if a claim for refund under § 13–901(a)(1) or (2) or (d)(1)(i) or (2) of this title is approved, the tax collector shall pay interest on the refund from the 45th day after the claim is filed in the manner required in Subtitle 9 of this title to the date on which the refund is paid.

This statute only requires the payment of interest if a claim for refund meets the conditions of Subtitle 9, and then, only from the 45th day after the claim is filed. The principal dispute between the parties is the interpretation of Subtitle 9. Appellant asserts that the estate is provided two alternative ways to file, either under § 13–901(a) or (d):

(a) *In general.*—A claim for refund may be filed with the tax collector who collects the tax, fee, or charge by a claimant who:

(1) erroneously pays the State a greater amount of tax, fee, charge, interest, or penalty than is properly and legally payable;

(2) pays to the State a tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner; or

(3) pays a tax qualifying for refund under subsections (b) through (h) of this section.

\* \* \*

(d) *Maryland estate or generation-skipping transfer tax.*— A claim for refund of Maryland estate tax or Maryland generation-skipping transfer tax may be filed by a claimant required to pay the tax if:

(1) the Maryland estate tax is decreased as a result of:

(i) a decrease in the federal estate tax on the estate.

Appellant believes that the use of subsection (a) is appropriate as a separate, legitimate basis to subsection (d) because, "The Estate had paid to the State a greater amount of tax than was properly payable, given this Court's decisions that Rose lacked a power of appointment." Appellant argues that the use of "or" in the statute provides for alternative means of filing, and that either section (a) or (d) provides a basis for a refund.

■ This argument is not supported by the principles of statutory construction and interpretation. In *Montgomery County v. Buckman*, 333 Md. 516, 524, 636 A.2d 448 (1994), the Court of Appeals discussed the well-settled rule on statutory interpretation and stated, "... absent a clear intent to the contrary, a statute is to be read so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory." If we were to recognize the ability to file under the general provisions of subsection (a) for a specific kind of refund that is denoted in another subsection in the same statute, then the more specific subsection would become meaningless. When all the subsections are read together, it is clear that the relevant subsection in this case is subsection (d). Appellee contends that the only applicable refund subsection is § 13–901(d). We agree and continue with an analysis of this subsection.

The language in § 13–901(d)(1)(i) is unambiguous. When the statutory language is unambiguous, the court may not "add nor delete language so as to reflect an intent not evidenced in that language, nor may it construe the statute with forced or subtle interpretations that limit or extend its application." *Mayer & City Council of Baltimore et. al. v. Chase et al.*, 360 Md. 121, 128, 756 A.2d 987 (2000) (*quoting Chesapeake and Potomac Telephone Co. of Maryland v. Director of Finance for Mayor and City Council of Baltimore*, 343 Md. 567, 578–79, 683 A.2d 512 (1996)) (*internal citations omitted*). Furthermore, when a statute is unambiguous, the court may not add or delete words to avoid a harsh result. *See Condon v. State of Maryland–University of Maryland*, 332 Md. 481, 491, 632 A.2d 753 (1993). *See also Simpson v. Moore*, 323 Md. 215, 225, 592 A.2d 1090 (1991). Section 13–901(d)(1)(i) requires a decrease in the Maryland estate tax only if there is a decrease in the federal estate tax. The event that triggers the decrease in the Maryland estate tax is the decrease in the federal estate tax, which did not occur until 2005. The outcome of the federal decrease has a direct impact on the tax obligation in Maryland. The dependent outcome is clear in the language of the statute, and the court is obligated to follow such language.

The controlling case, which both appellant and appellee cite, is *Comptroller of the Treasury v. Fairchild Industries, Inc.*, 303 Md. 280, 493 A.2d 341 (1985), where a corporate taxpayer had net losses in 1978. Under the Maryland Code, the taxpayer applied for a retroactive deduction of the preceding three years of taxes. The main issue in the case was from which date interest was due, the original filing date of each year's income tax returns, or the 1979 amended return, filed after the company realized the net operating loss. Although the applicable statute has been changed, the analysis still applies. The Court stated, "The interest provisions contained in Article 81 of the Maryland Code are designed to commence the running of interest from the time that the operative facts arise which entitles a taxpayer or the State to the principle amount in question and for the period that such amounts were

held by or subject to the use of the other party." *Id.* at 288–89, 493 A.2d 341. The key phrase that is widely used from this case is the "operative facts" language. As discussed by the Court in *Fairchild Industries, Inc. id.* at 289, 493 A.2d 341:

> The event which gave rise to the overpayment of Fairchild's 1975, 1976, and 1977 taxes was its net operating loss in 1978–a year subsequent to the year in which the excess taxes were actually paid. Had there been no net operating loss incurred in 1978, there would have been no net operating loss carryback to the three previous years. Before Fairchild incurred net operating losses in 1978, it had no basis for claiming a refund for overpayment of taxes.

The operative fact in *Fairchild Industries, Inc.* was the actual net operating loss. It was not until the loss that the previously paid taxes could be recognized as overpayments.

The operative fact here, according to appellant, is the holding of *Posner v. McDonagh*, wherein this Court held that the marital trust was not part of Rose Posner's estate, and, thus, not subject to the estate taxes. Appellant argues that the resulting decrease in tax liability is the consequence of the operative fact, not the operative fact itself.

But, according to the plain language of the statute and *Fairchild Industries, Inc.,* the operative fact could not occur until the actual decrease in the federal estate tax. The decrease in the federal estate tax is a trigger for a decrease in the State estate tax. It was at that point that the State was obligated either to comply with the request or contest it. Any interest on the refund would only have begun to accrue after that formal claim was made. *See also Hickey v. Comptroller,* 92 Md.App. 1, 8, 606 A.2d 282 (applying the more recent interest statute but using the operative facts language when the court found that the formal claim must be made before the interest can begin to accrue), *cert. denied,* 327 Md. 626, 612 A.2d 256 (1992). Similar to the operative fact in *Fairchild Industries, Inc.,* it was not until the 2005 federal estate tax decrease that Maryland could determine that a State credit

was due, and the 2005 decision is the date from which interest began to accrue.

Appellant cites to *Lyon v. Campbell,* 324 Md. 178, 596 A.2d 1012 (1991), for the proposition that the taxes are inextricably keyed. Appellant argues that in order to avoid an anomalous result, Maryland must follow the federal decision to award interest. This case only requires such results when the State adopts the federal law. *Id.* at 185, 596 A.2d 1012. Although the Maryland estate tax is statutorily linked to the federal estate tax, the connection does not mean that the results must be identical. Instead, the Maryland refund is dependent on the federal decrease because the accruing of interest is triggered by a federal decision. Furthermore, Maryland did make the same decision as the federal court in awarding a refund. The difference was in the awarding of interest, and we have stated why that is the correct decision. The relationship created in the Maryland Code does not require identical results.

Accordingly, we affirm the circuit court's decision and hold that the application of Section 13–901(d)(1)(i) requires a federal tax decrease before Maryland may issue an estate tax refund.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**